UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAURA A. WESSELIUS,

                Plaintiff,

  v.

NANCY BERRYHILL, Acting Commissioner of Social Security,[1]

                Defendant.

Case No. 2:16-cv-00171-KLS

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On January 7, 2009, plaintiff filed an application for SSI benefits, alleging she became disabled beginning February 1, 2007. Dkt. 12, Administrative Record (AR) 870. That application was denied on initial administrative review and on reconsideration. *Id.* At a video hearing held before an Administrative Law Judge (ALJ), plaintiff appeared and testified. AR 34-67. She also

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER - 1

amended her alleged onset date of disability to January 7, 2009. AR 870.

In a decision dated December 1, 2010, the ALJ found that plaintiff could perform her past relevant work, and therefore that she was not disabled. AR 16-27. Plaintiff's request for review of that decision was denied by the Appeals Council on August 1, 2011. AR 1. On April 25, 2012, this Court reversed the ALJ's decision and remanded this matter for further administrative proceedings. AR 1004-1028.

A second hearing was held on remand before the same ALJ, at which plaintiff appeared and testified, as did a vocational expert. AR 905-959. In a decision dated July 14, 2014, the ALJ determined that plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that she was not disabled. AR 870-893. It appears the Appeals Council did not assume jurisdiction of the matter, making the ALJ's decision the Commissioner's final decision, which plaintiff then appealed in a complaint filed with this Court on February 12, 2016. Dkt. 3; 20 C.F.R. § 416.1484.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1)  in evaluating the medical and other opinion evidence in the record, including from Mary Ballard, M.D., Janis Lewis, Ph.D., Shannon Kellogg, Psy.D., Victoria McDuffee, Ph.D., William Wilkinson, Ed.D., Sean Mee, Ph.D., Leslie Postovoit, Ph.D., Eugene Kester, M.D., Mary Gentile Ph.D., and Angela Coe, BS;

(2)  in rejecting plaintiff's testimony;

(3)  in evaluating the lay witness evidence in the record;

(4)  in assessing plaintiff's residual functional capacity (RFC); and

(5)  in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court agrees that the ALJ erred in evaluating the opinion

ORDER - 2

evidence from Dr. Lewis, Dr. McDuffee, and Ms. Coe, and thus in assessing plaintiff's RFC and in finding she could perform other jobs. Also for the reasons set forth below, however, remand for further administrative proceedings, rather than an award of benefits, is warranted.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v.*

ORDER - 3

*Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. <u>The ALJ's Evaluation of the Medical and Other Opinion Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation

ORDER - 4

omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A.  Dr. Lewis

With respect to the opinion evidence from Dr. Lewis, the ALJ found:

> In August 2010, Dr. Lewis, following [an] evaluation of the claimant, opined that the claimant had mild limitations in her abilities to learn new tasks, or to understand and follow simple directions. She opined that the claimant had moderate limitations in her abilities to care for herself, to interact appropriately in public contacts, or to understand and follow complex directions. She opined that the claimant had marked limitations in her abilities to make decisions, to maintain appropriate behavior, to perform routine tasks, to relate appropriately to coworkers, or to respond appropriately to the pressure of a normal work setting. I give minimal weight to this opinion. Despite Dr. Lewsi's opinions regarding the claimant's limited abilities to perform routine tasks or care for herself, the claimant informed Dr. Lewis that she currently was reading, making appointments, and otherwise performing her activities of daily living. At this time, the claimant displayed normal appearance, cooperative behavior, tearful affect, slowed pace, and logical and directed thought process. She recalled three of three memorized items after a five-minute delay. During psychiatric treatment prior to this appointment, the

ORDER - 5

>claimant had routinely displayed normal psychomotor activity, normal speech, stable and euthymic affect, coherent and directed thought process, and fair to good cognition. To treating psychiatrist Dr. [Anjan] Sattar, she had routinely reported an "ok" mood, including during an appointment three days prior to Dr. Lewis's [state]-sponsored evaluation. During medical treatment later in August 2010, the claimant displayed normal mood and affect. In light of her benign findings in treatment settings, as well as the activities and generally benign findings documented during Dr. Lewis's [state]-sponsored evaluation, I give minimal weight to Dr. Lewis's opinions of moderate to marked limitations.

AR 889 (internal citations omitted). Plaintiff argues the ALJ's stated reasons for giving little weight to Dr. Lewis's opinions are not sufficient. The Court agrees.

First, in terms of what plaintiff told Dr. Lewis concerning the tasks and activities of daily living she performed, Dr. Lewis's evaluation report merely reveals that plaintiff reads books about animals – but notably "much more infrequent[ly]" – that she monitors her own blood sugars, and that she does "[s]ome" household chores. AR 1355. Elsewhere in that report, Dr. Lewis noted generally that plaintiff does her own activities of daily living and makes appointments. AR 1358. But there is no indication how often or to what extent plaintiff engages in those tasks. Indeed, there is little to suggest that these self-reported activities are inconsistent with the limitations Dr. Lewis assessed.

Second, the mental status examination findings Dr. Lewis obtained are not nearly as benign as the ALJ makes them out to be. Although plaintiff did display normal psychomotor activity and speech, stable and euthymic affect, coherent and directed thought process, and fair to good cognition, her affect was blunted, she was slow-paced, and she had problems performing both serial 3's and serial 7's. AR 1363. Dr. Lewis also observed that plaintiff looked very tired, that she was tearful, awkward, tense, guarded, negative, discouraged, and preoccupied, that she cried, and that she appeared downcast and older than her stated age. AR 1358. The ALJ's failure to note these findings, indicates she did not fully consider all of the relevant clinical evidence in

ORDER - 6

rejecting Dr. Lewis's opinions. *See Reddick*, 157 F.3d at 722-23 (finding the ALJ erred "by not fully accounting for the context . . . or all parts of" the relevant evidence, noting further that the ALJ's "paraphrasing of record material [wa]s not entirely accurate regarding the content or tone of the record").

Third, the ALJ similarly failed to accurately characterize the evidence in the record with respect to plaintiff's mental health treatment prior to Dr. Lewis's evaluation. That evidence is far more mixed than the ALJ made it out to be. For example, in February and March, 2010, mental health progress notes revealed fairly normal mental status examination findings and significant improvement on medication. AR 456-60. Beginning in April 2010, however, plaintiff reported and continued to report an increase in mental health symptoms, as well as significant side effects from the medication she was taking, even though more positive findings also were noted at times. AR 436-45, 447-48, 450-55, 494-96, 542. As the Ninth Circuit has emphasized "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment."). It seems this is exactly what the ALJ did here, and that constitutes reversible error.

B.   Dr. McDuffee

In regard to the opinion evidence from Dr. McDuffee, the ALJ stated:

> In April 2012, psychological examiner Dr. McDuffee opined that the claimant had marked limitations in her ability to maintain appropriate behavior or to sustain employment in a dependable manner. She opined that the claimant had low average to borderline intellectual functioning and that she "does not appear to be able to adapt to change". I give minimal to no weight to this assessment. Dr. McDuffee gave no indication of an objective basis for her opinions, and instead relied on the claimant's subjective reporting of symptoms. However, the administration of the MMPI during Dr.

ORDER - 7

> McDuffee's evaluation produced results that "raised concerns regarding the possibility of over reporting of symptoms impacting the validity of the protocol". As discussed earlier, the claimant's presentation during Dr. McDuffee's evaluation are not consistent with her other psychological findings in 2012. The claimant's activities and longitudinal examination findings since her amended alleged onset date are consistent with her ability to maintain appropriate behavior and to adhere to a routine. This evidence of record is not consistent with deficits in her intellectual functioning. I therefore give greater weight to other opinions that are consistent with the evidence of record since the claimant's amended alleged onset date.

AR 890 (internal citations omitted). Again, the Court agrees with plaintiff that the ALJ's asserted reasons for rejecting Dr. McDuffee's opinion do not withstand scrutiny.

Although it is true that psychological testing produced results that raised the possibility of over-reporting of symptoms, there is no indication Dr. McDuffee did not take this into account in evaluating plaintiff's symptoms and limitations. AR 1973-78. Further, contrary to the findings of the ALJ, Dr. McDuffee did provide an objective basis for her conclusions. For example, she noted that plaintiff "appear[ed] to be lower intellectual functioning – low average to borderline." AR 1976. Plaintiff also was noted to be "poorly dressed and groomed, malodorous," her speech was slow and her psychomotor was retarded, she was dramatic and had a labile and tearful affect, as well as fleeing eye contact, and her mood appeared to be anxious and depressed. AR 1976-77.

In addition, plaintiff was not able to calculate, she displayed impaired attention, she had poor insight, her memory appeared to be impaired, and her thought processes were obsessively ruminating. AR 1977. Plaintiff's mental status examination also indicated limitations in regard to concentration, and impaired abstract reasoning. *Id.* Nor does the ALJ adequately specify the evidence of "other psychological findings in 2012," or "activities and longitudinal examination findings since [plaintiff's] amended alleged onset date," that she asserts is inconsistent with Dr. McDuffee's conclusions. Nor does the ALJ explain why those findings are deserving of greater weight than Dr. McDuffee's own objective findings, particularly in light of the fact that the ALJ

ORDER - 8

seems not to have actually considered the latter. Here too, therefore, the ALJ erred.

C.   Ms. Coe

In late June 2011, Ms. Coe, plaintiff's treating mental health therapist, wrote a letter in which she opined that plaintiff's symptoms were "severe enough to cause serious impairment in social, occupational, or school functioning." AR 1515. The ALJ did not mention or discuss this opinion evidence in her decision. Plaintiff argues this was error, and once more the Court agrees. Defendant argues any error here was harmless, because Ms. Coe's opinion mirrors that of other medical source opinion evidence in the record the ALJ rejected, and because the ALJ reasonably relied on other medical opinion evidence.

An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007). The Court finds the ALJ's errors here are not harmless. First, as discussed above, the ALJ's evaluation of the opinion evidence in the record was not without serious errors. Second, even if the ALJ did not err with respect to every medical source opinion in the record, Ms. Coe's opinion still constitutes significant probative evidence that the ALJ should have considered. *See* 20 C.F.R. § 416.913(d) (evidence from "other sources" may "show the severity" of a claimant's impairments and their effect on the claimant's ability to work). Given Ms. Coe's treating relationship with plaintiff, it certainly is within the realm of possibility that had the ALJ considered her opinion, this would have resulted in a different disability determination.

II.   The ALJ's RFC Assessment

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not

ORDER - 9

disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found that plaintiff had the following mental RFC:

> **She has sufficient concentration to understand, remember and carry out simple and repetitive tasks. She can maintain concentration and pace in such tasks in two-hour increments throughout an eight-hour workday, with usual and customary breaks. She can tolerate superficial and occasional interaction with the general public. She can work in the same room as a small number of coworkers (up to five coworkers) but cannot work in coordination with them. She can interact occasionally with supervisors and can adapt to workplace changes as would be required for simple and repetitive tasks. With these accommodations, she is able to maintain adequate punctuality and attendance.**

AR 879 (emphasis in the original). But because as discussed above the ALJ erred in failing to properly evaluate the opinion evidence from Dr. Lewis, Dr. McDuffee, and Ms. Coe, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's functional limitations. Accordingly, the ALJ erred here as well.

ORDER - 10

III.    The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 892-93. But because as discussed above the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed to the vocational expert – and thus that expert's testimony and the ALJ's reliance thereon – cannot be said to be supported by substantial evidence or free of error.

IV.    Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court

ORDER - 11

reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the opinion evidence in the record, plaintiff's RFC, and her ability to perform other jobs exiting in significant numbers in the national economy, remand for further consideration of those issues is warranted.

Plaintiff argues that crediting the opinion evidence the ALJ erred in evaluating as true can only support a finding of disability and an award of benefits. It is true that where an ALJ has not provided adequate reasons for rejecting the opinion of either an examining or a treating medical source, that opinion evidence generally is credited as a matter of law. *Lester*, 81 F.3d at 834. On the other hand, the Court should "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. Here, where, the ALJ has erred with respect to some, but not all of the medical and other opinion evidence in the

ORDER - 12

record, there is still serious doubt as to whether plaintiff is in fact disabled. As such, remand for further administrative proceedings is more appropriate.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 4th day of April, 2017.

Karen L. Strombom
United States Magistrate Judge

ORDER - 13